# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 7, 2010 Session

## PUGH'S LAWN LANDSCAPE COMPANY, INC. v.
## JAYCON DEVELOPMENT CORPORATION

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. CT 001228-06     D'Army Bailey, Judge**

_____

**No. W2008-01366-SC-R11-CV - Filed September 22, 2010**

_____

We granted appeal in this case to address whether parties may modify by agreement the scope of judicial review of an arbitrator's award. We hold that judicial review of arbitration awards is governed by the Tennessee Uniform Arbitration Act ("TUAA"). As such, the provision in the parties' arbitration agreement purporting to expand the scope of the judicial review beyond that set forth in the TUAA is invalid. We further hold that the failure of this provision constitutes a mutual mistake requiring rescission of the parties' arbitration agreement. We therefore reverse the judgment of the Court of Appeals, vacate the trial court's judgment confirming the arbitrator's award, and remand this case to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Reversed;**
**Case Remanded to Trial Court for Further Proceedings**

JANICE M. HOLDER, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Kathy Baker Tennison and Stuart B. Breakstone, Memphis, Tennessee, for the appellant, Pugh's Lawn Landscape Co., Inc.

Stephen F. Libby, Memphis, Tennessee, for the appellee, Jaycon Development Corporation.

**OPINION**

**I. Facts and Procedural History**

On March 8, 2006, Pugh's Lawn Landscape Company, Inc. ("Pugh's") filed a complaint for breach of contract against Jaycon Development Corporation ("Jaycon") in the Circuit Court for Shelby County. In its answer, Jaycon asserted a counterclaim against Pugh's for breach of contract. The contract expressly provided that any disputes arising from the contract would be governed by Tennessee law and that any litigation or arbitration must be conducted in Tennessee. The contract did not, however, require the parties to submit to arbitration. Nonetheless, after conducting limited discovery, the parties agreed to submit the matter to arbitration.

On May 15, 2007, the trial court entered a consent order captioned "Order of Reference to Arbitration and Reservation of Appellate Rights" ("consent order"), which provided as follows:

> The parties agree that a) any and all findings, rulings or judgments issued by the arbitrator shall be appealable, using the same standards of review, as if the finding, ruling or judgment in question was issued by [the trial court]; b) that the agreement that the arbitrator's ruling is appealable was material consideration for the agreement of each party to submit this matter to arbitration.

A local attorney conducted the arbitration in May 2007 and issued a written decision on December 11, 2007, awarding Jaycon $51,082.20 in damages, plus attorneys fees, court costs, and the cost of the arbitration. On January 4, 2008, Jaycon filed a motion asking the trial court to confirm the arbitrator's award. Pugh's did not file a response. On January 18, 2008, the trial court entered an order confirming the arbitrator's award and entering judgment in favor of Jaycon.

Pugh's appealed. Relying on the language in the consent order permitting either party to seek an appeal, Pugh's asked the Court of Appeals to review the arbitrator's award pursuant to the parties' "reservation of appellate rights." At oral argument, the Court of Appeals sua sponte raised the issue of whether parties may modify by agreement the scope of judicial review of an arbitrator's award and ordered the parties to file supplemental briefs.[1]

---

[1] The Court of Appeals requested the parties to address the following issues:

(continued...)

The Court of Appeals held that judicial review of an arbitrator's decision is statutorily limited by the Tennessee Uniform Arbitration Act ("TUAA") and that parties may not modify by agreement the scope of judicial review of an arbitrator's award from that set forth in the TUAA. Having so held, the intermediate appellate affirmed the trial court's order confirming the arbitrator's award.

Pugh's filed a petition for rehearing in which Pugh's contended that the consent order's provision for expanded judicial review was a material element of the parties' agreement to arbitrate and that the agreement should be rescinded based on mutual mistake. The Court of Appeals denied the petition for rehearing based on Pugh's failure to object in the trial court to Jaycon's motion to confirm the arbitration award and raise the issue of mutual mistake. The intermediate appellate court held that the record therefore lacked sufficient information from which to determine the validity of the agreement to arbitrate.

We granted Pugh's application for permission to appeal to determine whether parties may agree to a scope of judicial review of an arbitrator's award that differs from the judicial review set forth in the TUAA.

## II. Analysis

### A. Scope of Review of an Arbitration Award in Tennessee

An agreement to arbitrate is governed by the TUAA.[2] Tenn. Code Ann. §§ 29-5-301 to -320 (2000). The TUAA provides that

> (a) A written agreement to submit any existing controversy to
> arbitration . . . is valid, enforceable and irrevocable save upon

---

[1] (...continued)
1. Whether the parties can modify by agreement the trial court's role and responsibility in addressing the motion to confirm the arbitrator's award?
2. Whether the parties can modify by agreement the appellate court's role and responsibility in reviewing the trial court's order confirming the arbitrator's award?

Pugh's Lawn Landscaping Co., Inc. v. Jaycon Dev. Corp., No. W2008-01366-COA-R3-CV, 2009 WL 1099270, at *3 (Tenn. Ct. App. April 23, 2009).

[2] This case does not involve non-binding arbitration or any other method of court-annexed alternative dispute resolution contemplated by Tennessee Supreme Court Rule 31. See Tuetken v. Tuetken, No. W2008-00274-SC-R11-CV, __ S.W.3d __, __ (Tenn. 2010) (concluding that the consent order embodying the parties' arbitration agreement did not invoke the provisions related to non-binding arbitration under Rule 31 and therefore was governed by the TUAA).

such grounds as exist at law or in equity for the revocation of
any contract . . . .

(b) The making of an agreement described in this section
providing for arbitration in this state confers jurisdiction on the
court to enforce the agreement under this part and to enter
judgment on an award thereunder.

Tenn. Code Ann. § 29-5-302. We have held that "[a] judgment by consent is in substance
a contract of record made by the parties and approved by the court." Third Nat. Bank v.
Scribner, 370 S.W.2d 482, 486 (Tenn. 1963); accord Harbour v. Brown, 732 S.W.2d 598,
599-600 (Tenn. 1987). Thus, the parties' agreement to arbitrate embodied in the consent
order falls within the scope of the TUAA.

Three statutes describe the judicial review that a court must apply when asked to
enforce an arbitration award pursuant to the TUAA. See Tenn. Code Ann. §§ 29-5-312 to
-314. Pursuant to section 29-5-312, "the court *shall* confirm an award, unless, within the
time limits hereinafter imposed, grounds are urged for vacating or modifying or correcting
the award, in which case the court *shall* proceed as provided in §§ 29-5-313 and 29-5-314."
(Emphasis added). The grounds enumerated in sections 29-5-313 and 29-5-314 for vacating,
modifying, or correcting an arbitration award are narrow.[3]

---

[3] Section 29-5-313(a)-(b) provides that "the court *shall* vacate an award" where:

(1) The award was procured by corruption, fraud or other undue means;
(2) There was evident partiality by an arbitrator appointed as a neutral or corruption
in any of the arbitrators or misconduct prejudicing the rights of any party;
(3) The arbitrators exceeded their powers;
(4) The arbitrators refused to postpone the hearing upon sufficient cause being
shown therefor or refused to hear evidence material to the controversy or otherwise
so conducted the hearing, contrary to the provisions of § 29-5-306, as to prejudice
substantially the rights of a party; or
(5) There was no arbitration agreement and the issue was not adversely determined
in proceedings under § 29-5-303 and the party did not participate in the arbitration
hearing without raising the objection. The fact that the relief was such that it could
not or would not be granted by a court of law or equity is not ground for vacating
or refusing to confirm the award.
(b) An application under this section shall be made within ninety (90) days after
delivery of a copy of the award to the applicant, except that, if predicated upon
corruption, fraud or other undue means, it shall be made within ninety (90) days
after such grounds are known or should have been known.

(continued...)

In this case, however, the parties agree that they did not intend to invoke the narrow judicial review provisions provided in the TUAA. To obtain review pursuant to the TUAA, one of the parties was required to request that the trial court vacate, modify, or correct the arbitrator's award pursuant to the limited grounds set forth in the TUAA. See id. §§ 29-5-313, -314. Neither party objected to the trial court's confirmation of the award, and therefore neither party preserved a basis for appeal from the trial court's confirmation. See id. § 29-5-312.

Instead, the parties in this case attempted to appeal the arbitrator's award, not the trial court's confirmation of the award. To do so, the parties included a provision in their consent order stating that the arbitrator's award "shall be appealable, using the same standards of review, as if the finding, ruling or judgment in question was issued by [the trial court]." Simply put, they attempted to make the decision of the arbitrator the judgment or ruling of the trial court and to permit an appeal therefrom.

We therefore must determine whether an arbitration agreement may provide for a judicial review of an arbitration award that is broader than the scope of review provided by the TUAA or whether the application of the TUAA limits the manner in which the arbitrator's award may be reviewed. This is an issue of law, which we review de novo. Edwards v. Allen, 216 S.W.3d 278, 284 (Tenn. 2007).

---

[3] (...continued)
(Emphasis added).

Section 29-5-314 provides that "the court *shall* modify or correct the award" if an application is "made within ninety (90) days after delivery of a copy of the award to the applicant," and

> (1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;
> (2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or
> (3) The award is imperfect in a matter of form, not affecting the merits of the controversy.
> (b) If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the court shall confirm the award as made.
> (c) An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

(Emphasis added).

We have not addressed this issue directly, but we previously have touched on the role of trial courts in arbitration. In Arnold v. Morgan Keegan & Co., Inc., we observed that the language of the TUAA evinced the General Assembly's intent "to limit the trial court's authority to retry issues decided by arbitration." 914 S.W.2d 445, 448 (Tenn. 1996). We also emphasized the importance of finality in the arbitration award process: "To permit a dissatisfied party to set aside the arbitration award and to invoke the Court's judgment upon the merits of the cause would render arbitration merely a step in the settlement of the dispute, instead of its final determination." Id. at 452.

In Arnold, we relied heavily on the United Stated Supreme Court's decision in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995), which concerned the Federal Arbitration Act ("FAA"). We explained that both the FAA and the TUAA were adopted "to promote private settlement of disputes, thereby bypassing the courts. As such, the scope of review advanced by the United States Supreme Court has equal application in a case under the [TUAA] to the extent that such review furthers the common goal of acts."[4] Arnold, 914 S.W.2d at 448 n.2. For the same reason, the United States Supreme Court's decision in Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008), also concerning the FAA, guides our analysis of the issue presented in this case.

In Hall Street, the Supreme Court rejected the parties' agreement to expand the trial court's review of their arbitration awards under the FAA. The arbitration agreement between the parties in Hall Street provided that the trial court "shall vacate, modify or correct any award: (i) where the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous." Id. at 579. The arbitration agreement was executed and entered as an order of the trial court during the course of litigation, like the consent order in this case, and did not expressly invoke the FAA. Id. at 590-91.

Like the TUAA, three statutes describe the judicial review that a court must apply when asked to enforce an arbitration award pursuant to the FAA. 9 U.S.C. §§ 9-11 (2006). Pursuant to section 9 of the FAA, a court "must" confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." Like sections

_____

[4] We also stated in Arnold that "[m]atters of law, if not able to be resolved by resort to the controlling statutes, should be considered independently, with the utmost caution, and in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." 914 S.W.2d at 450. To the extent that our opinion in Arnold can be read to adopt a standard of review of issues of law other than de novo, we take this opportunity to clarify our holding. We adopt the statement of the United States Supreme Court in First Options of Chicago, Inc. that "ordinary, not special, standards" of appellate review should apply in arbitration cases and that appellate courts need not "give *extra* leeway to district courts that uphold arbitrators." 514 U.S. at 948.

29-5-313 and 29-5-314 of the TUAA, the grounds for vacating, modifying, or correcting an arbitration award under sections 10 and 11 of the FAA are narrow.[5] In Hall Street, the Court applied "basic interpretive principles" to these judicial review provisions to determine "whether the FAA has textual features at odds with enforcing a contract to expand judicial review following the arbitration." Hall Street, 552 U.S. at 586. The Court characterized the grounds for review under the FAA as remedies for "egregious departures from the parties' agreed-upon arbitration," id., and concluded that these grounds evinced "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." Id. at 588.

---

[5] Section 10(a) of the FAA provides in pertinent part:

In any of the following cases the United States court in and for the district wherein the award was made *may* make an order vacating the award upon the application of any party to the arbitration—
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(Emphasis added).

Section 11 of the FAA provides in pertinent part:

In either of the following cases the United States court in and for the district wherein the award was made *may* make an order modifying or correcting the award upon the application of any party to the arbitration—
(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

(Emphasis added).

In the Supreme Court's view, permitting parties to expand the FAA's judicial review provisions would "open[] the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' and bring arbitration theory to grief in post-arbitration process." Id. (citations omitted). The Hall Street majority carefully limited its holding, however, explaining that its interpretation of the FAA did not "exclude more searching [judicial] review based on authority outside the statute." Id. at 590. Parties "may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable." Id. We have reviewed the language of the TUAA and have concluded, in short, that the rationale proffered by the United States Supreme Court in Hall Street applies with equal force to the case before us.

We first observe that the language of the judicial review provisions in the TUAA are substantially similar to those in the FAA. Compare Tenn. Code. Ann. §§ 29-5-312 to -314 with 9 U.S.C. §§ 9-11. To the extent that these statutory schemes are different, the judicial review provisions in the TUAA are more restrictive. In reaching its conclusion that the FAA's judicial review provisions are mandatory, the Hall Street Court emphasized the language in section 9 stating that a court "must grant" confirmation "unless the award is vacated, modified, or corrected as prescribed by sections 10 and 11." Hall Street, 552 U.S. at 587 (quoting 9 U.S.C. § 9). Likewise, section 29-5-312 of the TUAA employs mandatory language, stating that "the court *shall* confirm an award, unless . . . grounds are urged for vacating or modifying or correcting the award, in which case the court *shall* proceed as provided in §§ 29-5-313 and 29-5-314." (Emphasis added). However, the FAA employs permissive language in sections 10 and 11, stating that the reviewing court "may" vacate, modify, or correct an award pursuant to the enumerated circumstances. The TUAA, on the other hand, continues to employ mandatory language in sections 29-5-313 and 29-5-314, stating that the reviewing court "shall" vacate, modify, or correct an award pursuant to the enumerated circumstances.

We also held in Arnold that an arbitration award cannot be vacated under the TUAA because it is "irrational" while federal courts have held that an award could be vacated on this ground under the FAA. Arnold, 914 S.W.2d at 451. We rested our holding on two observations. First, we noted that while the TUAA provides for vacation of an award because "[t]he arbitrators exceeded their powers," Tenn. Code Ann. § 29-5-313(a)(3), the FAA provides for vacation of an award on broader grounds: "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Second, we noted that the FAA does not include the limiting language of section 29-5-313(a) of the TUAA expressly disallowing vacation of an award on the ground that "the relief was such that it could not or would not be granted by a court of law or equity." Tenn. Code Ann. § 29-5-313(a)(5).

Finally, the General Assembly has directed that the TUAA be "construed so as to effectuate its general purpose to make uniform the law of those states which enact it." Tenn. Code Ann. § 29-5-320. We look to other states for guidance. Id. A slim majority of state courts that have addressed whether parties may expand the scope of judicial review provided in their own versions of the UAA have taken the position espoused in Hall Street. See Brucker v. McKinlay Transp., Inc., 557 N.W.2d 536, 541 (Mich. 1997) (holding that the parties' arbitration agreement was unenforceable to the extent its definition of the role of a the circuit court conflicted with the Michigan arbitration statute); John T. Jones Constr. Co. v. City of Grand Forks, 665 N.W.2d 698, 704 (N.D. 2003) (holding that "parties to an arbitration agreement cannot contractually expand the scope of judicial review beyond that provided by statute"); Barnett v. Hicks, 829 P.2d 1087, 1095 (Wash. 1992) (en banc) (holding that "the nature and scope of review of the arbitrator's decision cannot be stipulated to by the parties"). But see Cable Connection, Inc. v. DIRECTV, Inc., 190 P.3d 586, 589 (Cal. 2008) (holding on statutory and contractual grounds that parties may obtain judicial review on the merits by express agreement); HH E. Parcel, LLC v. Handy & Harman, Inc., 947 A.2d 916, 926 n.16 (Conn. 2008) ("Parties to agreements remain . . . free to contract for expanded judicial review of an arbitrator's findings.").

For the above-stated reasons, we hold that the TUAA governs judicial review of arbitration awards. Pugh's and Jaycon's consent order therefore impermissibly expanded the scope of judicial review beyond the scope of review provided in Tennessee Code Annotated sections 29-5-312, -313, and -314.

### B. Effect of the Invalidity of the Scope of Review Provision

We turn now to the question of whether the failure of the consent order provision expanding judicial review requires that we reform the agreement and review the award under the narrow review provisions of the TUAA or rescind the agreement and remand the case to the trial court.

As a preliminary matter, we disagree with the Court of Appeals' determination that the issue of the validity of the consent order is waived because Pugh's did not object to Jaycon's motion to confirm the arbitrator's award in the trial court. Generally speaking, we agree with the Court of Appeals that an issue cannot be raised for the first time on appeal. See Simpson v. Frontier Cmty. Credit Union, 810 S.W.2d 147, 153 (Tenn. 1991). However, neither party challenged at the trial level the provision in the consent order purporting to expand judicial review. The Court of Appeals raised this issue sua sponte during oral argument. Thereafter, Pugh's argued in its supplemental brief filed in the Court of Appeals that the failure of the provision purporting to expand judicial review rendered the consent order invalid and mandated a remand to the trial court. The Court of Appeals also erred in

finding that the record did not contain sufficient facts on which to make a finding on the validity of the parties' agreement to arbitrate. It is undisputed that the consent order embodies the only arbitration agreement between the parties.

In accord with the general principle that rescission is not favored in Tennessee, Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc., 102 S.W.3d 621, 631 (Tenn. Ct. App. 2002), we have held that a consent order cannot be set aside unless entered through fraud or mistake. Gardiner v. Word, 731 S.W.2d 889, 893 (Tenn. 1987); Third Nat. Bank, 370 S.W.2d at 487. This Court has explained that a "mistake" exists in a legal sense when a person, acting on an erroneous conviction of law or fact, executes an instrument that he or she would not have executed but for the erroneous conviction. State ex rel. Mathes v. Gilbreath, 181 S.W.2d 755, 757 (1944); Metro. Life Ins. Co. v. Humphrey, 70 S.W.2d 361, 362 (Tenn. 1934). A court may not rescind a contract for mistake unless the mistake is innocent, mutual, and material to the transaction and unless the complainant shows an injury. Klosterman Dev. Corp., 102 S.W.3d at 632 (quoting Robinson v. Brooks, 577 S.W.2d 207, 209 (Tenn. Ct. App. 1978)); see also Atkins v. Kirkpatrick, 823 S.W.2d 547, 553 (Tenn. Ct. App. 1991); Wilson v. Mid-State Homes, Inc., 384 S.W.2d 459, 463-64 (Tenn. Ct. App. 1964).

In this case, the record clearly establishes that the mistake was innocent and mutual in that both parties anticipated that expanded judicial review would be available. Indeed, neither party challenged at the trial level the provision in the consent order purporting to expand judicial review. Instead, this issue was raised by the Court of Appeals. Moreover, the consent order states "that the agreement that the arbitrator's ruling is appealable was material consideration for the agreement of each party to submit this matter to arbitration." Finally, the complainant, Pugh's, has shown an injury in that its right to appeal would be substantially limited were the arbitration agreement enforced despite the failure of the provision authorizing expanded judicial review. We therefore hold that rescission of the parties' arbitration agreement is the appropriate remedy for the parties' mutual mistake concerning the availability of the provision for expanded judicial review.

### III. Conclusion

We hold that parties may not modify by agreement the scope of judicial review of an arbitrator's award. Rather, judicial review of an arbitrator's award is governed by the TUAA. Furthermore, the failure of the provision modifying the scope of judicial review in this case constitutes a mutual mistake requiring rescission of the arbitration agreement. We therefore reverse the judgment of the Court of Appeals, vacate the trial court's judgment confirming the arbitrator's award, and remand this case to the trial court for further proceedings. Costs of this appeal are assessed equally between the appellant, Pugh's Lawn

Landscape Company, Inc., and the appellee, Jaycon Development Corporation, for which execution may issue if necessary.

 

_____
JANICE M. HOLDER, CHIEF JUSTICE