# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 18, 2014 Session

# BAYROCK INVESTMENT CO. v. JOSEPH D. BLANKENSHIP, M.D., ET AL.

### Direct Appeal from the Circuit Court for Madison County
### No. C11273     Donald H. Allen, Judge

### No. W2013-01091-COA-R3-CV - Filed April 15, 2014

This is a breach of contract case stemming from a commercial lease between Plaintiff Landlord and Defendant Tenants. Beginning in August 2011, Defendants failed to make rent payments in violation of their lease with Plaintiff. Plaintiff subsequently filed this lawsuit seeking damages specified in the lease. In response, Defendants raised the affirmative defense of unclean hands, contending that Plaintiff breached the lease first by objecting to and/or interfering with Defendants' right under the lease to sublease the property without Plaintiff's consent. The trial court granted summary judgment to Plaintiff, finding that Defendants failed to perform under the lease by failing to pay rent, and finding no genuine issue of material fact regarding any allegation that Plaintiff interfered with Defendant's ability to sublease the property. The Defendants argue that summary judgment was inappropriate because there exists a genuine issue of material fact regarding whether Bayrock breached the lease first by interfering with Defendants' right to sublease. We disagree and affirm the trial court's grant of summary judgment to Plaintiff.

### Tenn. R. App. P. 3 Appeal as of right; Judgment of the Circuit Court Affirmed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Daniel Davis Warlick, Nashville, Tennessee, for the appellants, Joseph D. Blankenship, M.D., Med-North Clinic, PLLC f/k/a MNG, PLLC, Med-North Group, PLLC, and Caresouth Clinic, P.C.

Jonathan David Buckner, Donald D. Glenn and William B. Mauldin, Jackson, Tennessee, for the appellee, Bayrock Investment Co.

# OPINION

## I. BACKGROUND AND PROCEDURAL HISTORY

In June 2003, CareSouth Clinic, P.C., as tenant, entered into a twenty-year commercial lease agreement[1] (the "Lease Agreement") with LPM CareSouth Jackson, LLC, as landlord, concerning property at what is now 1203 Vann Drive, Jackson, Tennessee (the "Subject Property"). At the same time, the President of CareSouth Clinic, P.C., Joseph D. Blankenship ("Blankenship"), also executed an agreement to personally guarantee the repayment of all amounts due under the Lease Agreement (the "Lease Guaranty").

In June 2008, Med-North Group, PLLC ("Med-North"), with Blankenship as its manager, entered an agreement in which it was assigned all of the rights of the tenant under the Lease Agreement. Around the same time, a North Carolina general partnership named Bayrock Investment Co. ("Bayrock") purchased the Subject Property for a price of $5,612,000 and became assignee of all of the rights of the landlord under the Lease Agreement and Lease Guaranty. At all times relevant in this matter, Med-North was the tenant of the Subject Property, and Bayrock was its landlord.

Pursuant to the Lease Agreement, Med-North was obligated to make payments to Bayrock each month to cover rent and other expenses. Med-North defaulted on the Lease Agreement when it failed to make a monthly payment due for August 2011. Upon Med-North's default, the Lease Agreement authorized Bayrock to charge a five percent late fee on overdue amounts owed. Additionally, Bayrock had the option to declare immediately due and payable all rents and other sums owed for the remainder of the lease term through January 2024. Pursuant to the Lease Guaranty, Blankenship was secondarily liable for all amounts due by Med-North under the Lease Agreement.

On October 21, 2011, Bayrock filed a complaint against Med-North and Blankenship (collectively the "Appellants") in the Circuit Court of Madison County asserting breach of contract against each for failure to make payments due under the Lease Agreement and Lease Guaranty. Bayrock contended that $39,707.17 in monthly rent and $3,498.57 in monthly taxes from August 2011 was overdue on the Subject Property at that time. Bayrock requested that the trial court enter a judgment against Appellants for all amounts due under the Lease Agreement and Lease Guaranty, including late fees and attorney's fees.

---

[1]Since the original Lease Agreement was signed in 2003, it has been amended three times. The original agreement and each of the subsequent amendments are all collectively referred to herein as the "Lease Agreement." The rent commencement date was later changed to January 7, 2004.

Appellants answered on December 21, 2010, admitting the terms of the Lease Agreement and Lease Guaranty, but denying that they had breached either contract, and asserting the affirmative defense of unclean hands. Appellants contended that Bayrock had breached the Lease Agreement prior to Med-North's nonpayment by denying Med-North's request to sublet the Subject Property in bad faith. Appellants requested that the trial court dismiss Bayrock's complaint.

On October 10, 2012, Bayrock filed a motion for summary judgment along with a supporting memorandum of law and a statement of undisputed facts. Attached to its motion was the affidavit of Bayrock's asset manager, Matt Bogdovitz ("Bogdovitz"), copies of the Lease Agreement and Lease Guaranty, a ledger estimating the total amounts due for the remainder of the lease term (the "Ledger of Amounts Owed"), and a portion of Blankenship's deposition. In its statement of undisputed facts, Bayrock submitted that Med-North's failure to make its monthly payment for August 2011 constituted an event of default of the Lease Agreement. Additionally, Bayrock stated that Med-North had vacated the Subject Property in February 2012, however the obligation to pay rent under the Lease Agreement does not terminate until January 2024. Citing the attached Ledger of Amounts Owed and Bogdovitz's affidavit, Bayrock stated that Appellants owed $7,599,988.04 for unpaid rent, taxes, and penalties due under the Lease Agreement. Bayrock contended that in the absence of any genuine issue of material fact, it was entitled to a judgment in that amount plus attorney's fees.

On January 28, 2013, Appellants responded to Bayrock's motion for summary judgment. Appellants' response submitted that disputed material facts precluded a grant of summary judgment to Bayrock. Specifically, Appellants cited paragraph 7(c) of the Lease Agreement, which provided Med-North, as tenant, the right to sublease the Subject Property to any entity who would succeed to Med-North's business through a sale of assets without Bayrock's consent. Appellants attached an affidavit from Blankenship to support their contention that prior to the nonpayment of rent, Med-North entered into an agreement with Elie Korban, M.D. ("Korban") and Delta Convenient Care, P.C. ("Delta") wherein Delta would purchase the assets of Med-North and sublease the Subject Property from it effective on June 8, 2011. In his affidavit, Blankenship stated that on June 25, 2011 Korban sent him an email stating that Bayrock would not allow him to sublease the Subject Property. Appellants contended that Bayrock's denial of the sublease was a breach of paragraph 7(c) of the Lease Agreement, which ultimately caused Med-North to be unable to make its monthly lease payments.

On February 5, 2013, Bayrock filed an reply in which it again denied the existence of any material facts precluding summary judgment in its favor. Bayrock did not dispute the existence of an agreement between Med-North and Delta, however it objected to

-3-

Blankenship's statement regarding the email from Korban as hearsay. A hearing was held on Bayrock's motion for summary judgment on February 8, 2013. At the hearing, the trial court concluded that it was not prepared to rule on Bayrock's motion for summary judgment, and it adjourned the hearing so that the parties could submit additional information.

On February 26, 2013, Appellants filed a supplemental response to Bayrock's motion for summary judgment along with a response to Bayrock's statement of undisputed facts. Attached to the supplemental response was a second affidavit of Blankenship, a copy of the sublease agreement between Med-North and Delta, and a copy of a detainer summons filed by Bayrock against Med-North and Delta on July 22, 2011 seeking possession of the Subject Property. In the supplemental response, Appellants admitted that Med-North failed to pay rents due beginning in August 2011, and that failure to do so constitutes an event of default under the Lease Agreement. Appellants further admitted that Med-North vacated the Subject Property in February 2012 even though the obligation to pay rent under the Lease Agreement will not terminate until January 2024. However, Appellants disputed the assertion that they owed Bayrock $7,599,988.04 for unpaid rent, taxes, and penalties due under the Lease Agreement. Appellants contended that Med-North reached an agreement to sublease the Subject Property to Delta, which the Lease Agreement provided it could do without Bayrock's consent. Appellants further asserted that Bayrock terminated their agreement with Delta by filing a detainer action seeking to evict Delta and alleging nonpayment of rent by Med-North. Appellants submitted that Bayrock's action in filing the detainer action caused Med-North to lose its agreement with Delta and caused Appellants to suffer damages leading to their inability to continue occupying the Subject Property.

On March 7, 2013, Bayrock replied to Appellants' response and statement of additional facts. In its reply, Bayrock did not dispute that Med-North entered into an agreement whereby Delta would sublease the Subject Property. Additionally, Bayrock did not dispute that it filed a detainer action against Med-North and Delta on July 22, 2011, however Bayrock did dispute that it terminated the sublease agreement between Med-North and Delta by doing so. In support of its contention, Bayrock attached a second affidavit of Bogdovitz.

In his second affidavit, Bogdovitz stated that Bayrock never objected to Med-North's sublease to Delta, and, in fact, that Bayrock explicitly communicated to both parties that it did not oppose the sublease. Bogdovitz relied on several documents attached to his affidavit to support the contention. The first was a letter that Bayrock sent to Delta on July 22, 2011, the same day Bayrock filed its detainer action against Med-North and Delta. In the letter, Bayrock acknowledged that Delta had been granted a purported sublease of the Subject Property and informed Delta that it would be filing the action to recover possession of the Subject Property due to nonpayment of rent. The second document was a request, filed by

Bayrock on August 2, 2011, to non-suit Delta in the pending detainer action. The third document was a letter from Bayrock to Appellants dated August 5, 2011, in which Bayrock stated that it did not raise any objection to the sublease by Delta. Additionally, Bayrock indicated in the letter that it understood from a prior conversation that Blankenship would be paying the June and July rents the following day, and that Korban would be paying rent for August. Bayrock further stated that it would not pursue the pending detainer action once the rent was brought current. The fourth document was a letter dated August 17, 2011, from Bayrock to Delta in which Bayrock assured Delta it was not subject to an eviction action at that time. The fifth and final document was also a letter from Bayrock to Delta dated August 18, 2011, in which Bayrock gave Delta assurances it would not be evicted as long as it made timely rent payments and otherwise complied with the terms of its agreement with Blankenship.

After holding a hearing on the matter, the trial court granted Bayrock's motion for summary judgment on April 12, 2013. The trial court found that the parties did not dispute the validity or terms of the Lease Agreement or the Lease Guaranty. The trial court found that in light of their failure to perform under the Lease Agreement, Med-North owed Bayrock monthly rent payments from August 2011 forward. The trial court noted that in the event of default, Bayrock had the option to declare all amounts owed under the Lease Agreement immediately due and payable. The trial court further found that there was no genuine issue of material fact regarding the allegation that Bayrock interfered with Med-North's right to sublease the Subject Property. In fact, the trial court found that Bayrock took specific actions to ensure that it did not interfere with any agreement between Med-North and Delta. Citing Bayrock's Ledger of Amounts Owed, the trial court determined that the total amount Med-North owed Bayrock for payments from the time of its default in August 2011 through the expiration of the lease term equaled $7,599,988.04. Additionally, the trial court noted that the Lease Agreement provided for Bayrock to recover its reasonable attorney's fees, which it found to be $24,176.10. The trial court found that Blankenship was personally obligated to pay the debt to Bayrock pursuant to the Lease Guaranty. Accordingly, the trial court entered a judgment in favor of Bayrock and against Appellants jointly and severally, in the amount of $7,624,164.14, and ordered that amount to be offset by monthly rental payments Bayrock received from any new tenant of the Subject Property prior to the expiration of the lease term. On April 24, 2013, Appellants filed a notice of appeal from the trial court's judgment.

## II. ISSUES PRESENTED

Slightly restated, the issues Appellants raise on appeal are:

1.    Whether the trial court erred by finding that there was no issue of material fact as to their liability for breach of contract.

-5-

2.      Whether the trial court erred in calculating the damages it awarded to Bayrock.

### III. STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). The party seeking summary judgment has the burden to demonstrate, by a properly supported motion, that there are no issues of material fact and that it is entitled to judgment as a matter of law. *Martin*, 271 S.W.3d at 83. (citations omitted).

This action commenced after July 1, 2011, therefore Tennessee Code Annotated § 20-16-101 is applicable to this matter. The statute states:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (Supp. 2012).

The trial court should award summary judgment only where a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000) (citations omitted). If there is any doubt about whether a genuine issue of material fact exists, summary judgment is not appropriate. *Martin*, 271 S.W.3d at 84. We review a trial court's award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Id.*

### IV. ANALYSIS

We first consider whether the trial court erred by granting summary judgment to Bayrock on its breach of contract claims. Appellants argue that Bayrock breached the parties' contract first and are therefore not entitled to recover on their claims. It is well settled that "[a] party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract." *United Brake Sys., Inc. v. Am. Envtl. Prot., Inc.*, 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997)(citation

omitted). Appellants contend that the first material breach of the Lease Agreement in this case was Bayrock's interference with Med-North's sublease agreement with Delta. However, there is substantial undisputed evidence in the record to establish that Bayrock did not object to the sublease agreement between Med-North and Delta, and therefore did not materially breach the Lease Agreement.

The relevant paragraph in the Lease Agreement provides that Med-North "shall have the right, without the consent of [Bayrock], to sublease the [Subject Property]" to a business entity who succeeds to the business of Med-North as a result of a sale of assets. It is undisputed that in July 2011, Med-North entered an agreement with Delta pursuant to which Delta would sublease the Subject Property. Additionally, it is undisputed that Bayrock filed a detainer action against Med-North and Delta on July 22, 2011, and at some point after that, Delta backed out of the agreement with Med-North. However, the evidence clearly shows that Bayrock's action did not violate the Lease Agreement or directly cause the agreement between Med-North and Delta to fall through.

Bayrock stated that it filed its detainer action seeking possession of the Subject Property after Med-North failed to make rent payments for June and July 2011. Appellants have not disputed that Med-North failed to make those rent payments. Pursuant to paragraph 18(B)(2) of the Lease Agreement, Med-North's failure to pay rent for June and July 2011 gave Bayrock the right to take possession of the Subject Property and to expel or remove Med-North or any other person occupying the Subject Property. Thus, Bayrock was acting within its rights under the Lease Agreement when it filed the detainer action against Med-North and Delta seeking possession of the Subject Property.

Additionally, throughout July and August 2011, Bayrock indicated to Delta on several occasions that it did not object to its sublease of the Subject Property. On July 22, the same day it filed the detainer action, Bayrock sent a letter to Delta, in which it recognized Delta's interest in the Subject Property, stating:

> Please accept this notice that the Lease for the above described property is in default for non-payment of rent. I understand that your client has been granted a purported sub-lease of the property. Without waiving any term of the lease as amended, please accept this notice that my client is filing an action to recover possession of the property and will pursue that action through judgment if the amounts due on this lease are not brought and maintained current.

On August 2, Bayrock non-suited Delta from the detainer action. On August 5, Bayrock sent a letter to Appellants explicitly stating that it did not raise any objection to the sublease to

Delta. Additionally, the letter stated that it was Bayrock's understanding that Appellants would pay amounts due for June and July the next day, and Korban would pay rent for August. Finally, the letter stated that Bayrock would dismiss the pending detainer action when rent was brought current. On August 17, Bayrock sent a letter to Delta assuring Delta that it was not subject to a proceeding for eviction from the property. On August 18, Bayrock sent another letter to Delta assuring Delta that for the remainder of 2011, Bayrock would not evict Delta as long as Delta made adequate and timely rent payments and otherwise fully complied with the terms of the Lease Agreement.

The evidence offered by Bayrock negates an essential element of Appellants' claim of breach. The evidence provided shows that Bayrock never objected to the sublease agreement between Med-North and Delta. Rather, it appears that Bayrock explicitly recognized the existence of the sublease agreement and attempted to alleviate any uncertainty on Delta's part about entering it. Thus, it is clear that Bayrock did not violated the terms of the Lease Agreement by objecting to or interfering with Med-North's sublease to Delta.

The only statement Appellants cite to suggest that Bayrock actually objected to the sublease agreement comes from Blankenship's affidavit filed on January 28, 2013. In it, Blankenship states that on June 25, 2011, he received an email from Korban stating that Bayrock would not allow him to sublease the Subject Property. Appellants did not present an affidavit from Korban or any other corroborating evidence to support the statement. Tennessee Rule of Civil Procedure 56.06 requires that affidavits presented in opposition to summary judgment must be made on affiant's personal knowledge, the statements contained therein must be admissible in evidence, and the affiant must be competent to testify regarding the substance of the affidavit. Tenn. R. Civ. P. 56.06 (2012). The statement in Blankenship's affidavit does not satisfy the requirements of the Rule 56.06, because Blankenship's testimony regarding what Korban allegedly said or what Bayrock allegedly communicated to Korban is hearsay. *See Todd v. Shelby County*, 407 S.W.3d 212, 218 (Tenn. Ct. App. 2012) ("In applying the burden shifting analysis on a motion for summary judgment, it is well settled that a court may not consider hearsay evidence."). Blankenship's statement is insufficient to contradict the evidence offered by Bayrock. Accordingly, the trial court did not err in granting summary judgment to Bayrock on the issue of Appellants' liability.

Having determined that the trial court's grant of summary judgment to Bayrock on the issue of liability was proper, we now turn to Appellants' argument that the trial court erred in calculating the correct amount of damages. While Appellants had the burden of proving the affirmative defense they raised to liability, Bayrock had the burden of proof with regard to damages. *See Old Republic Sur. Co. v. Eshaghpour*, M1999-01918-COA-R3CV, 2001 WL 1523364 at *9 (Tenn. Ct. App. Nov. 30, 2001). The only evidence Bayrock submitted

with regard to the amount of damages due under the Lease Agreement was the Ledger of Amounts Owed attached to its motion for summary judgment. In the Ledger of Amounts Owed, Bayrock calculated the rent for each month from Med-North's default in August 2011 until the lease term's expiration in January 2024. Bayrock also estimated the monthly taxes owed during that period. Additionally, Bayrock added a five percent late fee on both rent and taxes for each month. Upon adding all of the monthly totals together, the Ledger of Amounts Owed shows that $7,599,988.04 remains due and owing under the Lease Agreement. The trial court entered a judgment in favor of Bayrock against Appellants in that amount plus attorney's fees of $24,176.10, which the parties do not dispute was provided for in the Lease Agreement. The total judgment against Appellants was $7,624,164.14. On appeal, Appellants argue that the future amounts due under the Lease Agreement should have been discounted to their present value.

In addressing Appellants' argument, we first note that because they did not object to the admission of the Ledger of Amounts Owed, the trial court did not err in considering it to determine the proper amount of damages. *Summers v. Cherokee Children & Family Servs., Inc.*, 112 S.W.3d 486, 510 (Tenn. Ct. App. 2002). As to Appellants' argument that the amount due and owing under the Lease Agreement should have been discounted to its present value, we find that Appellants have waived this issue on appeal because they did not raise it before the trial court. It is well settled that an issue cannot be raised for the first time on appeal. *See Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 260 (Tenn. 2010). Appellants contend that their counsel raised the issue at the March 8, 2010, hearing on Bayrock's summary judgment motion when he inquired as to whether the amount of damages would be offset if the Subject Property were sold or leased to a new tenant in the future. We see no way of construing that inquiry to raise the issue of whether the damages should have been discounted to their present value. We therefore will not address the merits of this argument.

## V. CONCLUSION

Based on the foregoing, we affirm the trial court's grant of summary judgment to Bayrock and its judgment in favor of Bayrock, against Med-North and Blankenship, jointly and severally, in the amount of $7,624,164.14; that amount to be offset by future rental payments Bayrock receives from a new tenant. Costs of this appeal are taxed to the appellants, Joseph D. Blankenship, M.D., Med-North Clinic, PLLC f/k/a MNG, PLLC, Med-North Group, PLLC, and Caresouth Clinic, P.C., and their sureties, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE